Donald WALLACE et al., on behalf of themselves and all others similarly situated who have matters pending in the Criminal Term of the Supreme Court of the State of New York, Kings County, Plaintiffs-Appellees,

v.

Michael KERN et al., Defendants-Appellants.

The UNITED STATES of America ex rel. Michael A. McLAUGHLIN et al., Plaintiffs-Appellees,

v.

The PEOPLE OF the STATE OF NEW YORK et al., Defendants-Appellants.

Michael A. McLAUGHLIN et al., Plaintiffs-Appellees,

v.

The PEOPLE OF the STATE OF NEW YORK et al., Defendants-Appellants.

No. 1128, Docket 75–2069.

United States Court of Appeals, Second Circuit.

Argued May 23, 1975.

Decided June 30, 1975.

Stephen M. Latimer, New York City (Daniel L. Alterman, Robert Boehm, William M. Kunstler, Center for Constitutional Rights, New York City, James Reif, National Lawyers Guild, New York City, Alvin J. Bronstein, Nancy Crisman, National Prison Project, Washington, D. C.), for plaintiffs-appellees.

Stanley L. Kantor, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Margery E. Reifler, Asst. Atty. Gen., of counsel), for defendants-appellants.

William Gallagher, Pierce Gerety, Jr., Robert Hermann, N.Y.U. Law School, for amicus curiae Legal Aid Society, New York City.

Before MULLIGAN and GURFEIN, Circuit Judges, and POLLACK,* District Judge.

MULLIGAN, Circuit Judge:

This is an appeal from a final judgment entered March 26, 1975 in the United States District Court for the Eastern District of New York, Hon. Orrin G. Judd, *Judge,* mandating a variety of new bail procedures in the Supreme and Criminal Courts of Kings County,

* Of the Southern District of New York, sitting by designation.

New York. The judgment was entered in accordance with a memorandum decision of Judge Judd dated February 14, 1975 (as yet unreported). We reverse.

## I.

This action was commenced in July 1972 as a class action pro se by a group of inmates awaiting trial or sentencing in the Brooklyn House of Detention for Men. As twice amended, the complaint, brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, stated eight claims for relief.[1] The named defendants include the Justices of the Supreme Court of Kings County, as well as local administrative officials and court personnel. In gist, the plaintiffs alleged (a) that the burgeoning criminal caseload in the Kings County Supreme Court has caused excessive pre-trial delays and the consequent confinement of unconvicted detainees for prolonged periods of time in violation of their constitutional rights; (b) that the incarceration of indigent detainees unable to make bail violates the equal protection and due process clauses of the Fourteenth Amendment; and (c) that various practices have the effect of intimidating and coercing detainees into pleading guilty rather than stand trial.

This case has been on appeal in this court twice before. *Wallace v. Kern,* 481 F.2d 621 (1973) (*per curiam*), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974) (*Wallace I*); *Wallace v. Kern,* 499 F.2d 1345 (1974), cert. denied, 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425 (1975) (*Wallace II*). In *Wallace I,* Judge Judd had granted an application for a preliminary injunction against the Legal Aid Society's acceptance of any additional felony cases in the Kings County Supreme Court if the average caseload of its attorneys exceeded 40. The district court also had or-

dered the Clerk of the Criminal Term of the Kings County Supreme Court to place on the calendar all pro se motions filed by inmates of the Brooklyn House of Detention. This court reversed on the grounds that jurisdiction under section 1983 was absent since the Society was not acting under color of state law and that the court lacked power to intervene in the internal practices of the state courts. In *Wallace II,* Judge Judd had granted an application for a preliminary injunction ordering that each detainee held for trial for more than six months be allowed to demand a trial and be released on his own recognizance if not brought to trial within 45 days of his demand. This court reversed on the ground that questions concerning the right to a speedy trial are properly to be determined on a case-by-case basis rather than by a broad and sweeping order.

In this final stage of the case, the plaintiffs claimed that procedures in the state courts regarding bail are arbitrary and unreasonable. As a remedy, although not specified in the complaint, the plaintiffs sought improvements in the physical facilities of the courts so that attorneys might adequately consult with clients unable to post bail; an evidentiary hearing on the question of bail within 72 hours after arraignment; and a written statement by the judge of his reasons for fixing bail at any point when a bail decision is made. The plaintiffs also sought a declaration that current practices have a coercive effect on a detainee in regard to his decision whether to plead guilty or stand trial. After hearing numerous witnesses,[2] Judge Judd made findings of fact and conclusions of law on these issues.

### A. Bail Practices in Kings County

Despite much improvement since the commencement of this action,[3] Judge

1. The various claims for relief are set forth in *Wallace v. Kern,* 499 F.2d 1345, 1347 n. 2 (2d Cir. 1974), cert. denied, 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425 (1975).

2. Among those who testified at the hearing, which lasted seven trial days between July 25, 1974 and October 18, 1974, were several prisoners, one Criminal Court Judge, three Su-

preme Court Justices, five Legal Aid Society lawyers, two Assistant District Attorneys, a psychiatrist, a sociologist and two law professors.

3. For example, there was testimony that the information-gathering process with regard to the records of detainees in the Kings County

Judd found that criminal justice in Kings County is beset by lengthy delays which have an effect upon bail procedures. These begin in the Criminal Court when the defendant is arraigned after his arrest and bail is first set. There is provision for a preliminary hearing within 72 hours but this is usually adjourned. If a hearing is held, bail may be reduced or the defendant may be released on his own recognizance, but, according to the findings below, this also rarely occurs. A defendant may remain incarcerated for 45 days before he is indicted on a felony charge and his case proceeds to the Supreme Court. See N.Y. Crim.Proc. Law § 190.80. At the arraignment in Supreme Court, a de novo bail proceeding is held. The district court found, however, that those not released before this point generally remain incarcerated.

Several weeks after arraignment, a defendant's case will be called in the conference part for the purpose of disposing of the case by plea, if possible. At this time, the defendant may apply for bail review. A few weeks thereafter, the case will be assigned to a trial part. Further bail review applications may be filed in the motion part and considered in the trial part. If the defendant still is unable to meet bail, he may apply in Part 10, a special bail review section of the Supreme Court. Finally, a defendant may apply in the Supreme Court for habeas corpus, with review in the Appellate Division.[4]

Judge Judd found that certain sources of information relative to the bail decision are of great significance, namely, the New York State Criminal Investigation Information Service (NYSIIS) report and an ROR (Release on Own Recognizance) sheet. The NYSIIS report contains a listing of all of the defendant's arrests, but is usually incomplete with respect to the dispositions of those cases. The ROR sheet contains information on a defendant's background and community ties. While the Pre-Trial Service Agency, an organization funded by the federal and state governments which provides information to the court to assist it in making decisions on bail, endeavors to verify the assertions in the ROR sheet, Judge Judd found that in most cases it is unable to do so prior to the initial bail hearing. Bail proceedings in Criminal Court are very brief and the determinations made therein are often based upon incomplete or inadequate information. The court found that consideration is often given to open charges in the NYSIIS report but denied as to unverified favorable information in the ROR sheet.

Despite the fact that the factors underlying the bail decision of the Criminal Court judge are not known to him,[5] the arraigning Justice in the Supreme Court, Judge Judd found, seldom changes that decision, giving "[s]ubstantial weight" to the initial determination of the Criminal Court judge. In the conference part, the defendant sees a Justice only if he

---

Supreme Court has improved. Judge Judd recognized that the Supreme Court has undertaken a variety of administrative steps, including increasing the number of criminal parts, which have lessened trial delays. In the first few months of 1974, the number of defendants awaiting trial for nine months or more and six months or more was reduced in each case by over 30%. The Supreme Court has also imposed a limitation upon the number of cases that can be handled by Legal Aid Society lawyers in order to provide defendants with more effective representation. The Society has developed a new system designed to provide continuity of representation by a single attorney for each case. Administrative measures have

been taken to ensure efficient production of prisoners in court.

4. The district court found that there is no limit to the number of times a defendant can apply for bail review.

5. The Administrative Judge of the Criminal Court has directed the judges to put the reasons supporting their bail decisions in writing on the bail papers. The district court found that, although many judges put such reasons in the record, only a few write them on the papers. Moreover, the record of bail proceedings is not transcribed.

agrees to plead guilty. While a majority of applicants in Part 10 are granted bail reductions, Judge Judd noted that there was testimony "that the bail set in Part 10 could have been met if it had been set earlier."[6]

On the basis of these facts, Judge Judd reached certain conclusions of law.

## B. *Conclusions of Law*

Relying upon *Morrissey* v. *Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and its progeny, the district court held that due process requires "that a decision which may result in prolonged confinement shall be based on full evaluation of the facts, with an opportunity to present or controvert any pertinent evidence, and with a written statement of the reasons why a particular bail deter-

mination is reached." To correct the inadequate bail determination procedures which he found to exist in Kings County, Judge Judd ordered that an evidentiary hearing be had on demand at any time after 72 hours from the original arraignment and whenever new evidence or changes in facts may justify. At the hearing, the People would be required to present evidence of the need for monetary bail and the reasons why alternate forms of release would not assure the defendant's return for trial, and the defendant would be permitted to present evidence showing why monetary bail would be unnecessary. The defendant was also held to be entitled to a written statement of the judge's reasons for denying or fixing bail.[7] The court below dismissed the rest of the complaint except as indicated.[8]

6. The plaintiffs submitted to the court a copy of a computer study made in New York County which concluded that a person under incarceration has a lesser chance of being cleared, avoiding prison or obtaining a short sentence than one out on bail. The district judge noted some facts about the study which tended to limit its applicability to this case. Nonetheless, he found that a detained person has poorer prospects for vindication at trial or probation if convicted than does a defendant who has been released.

7. The order of the district court provides in pertinent part as follows:

(3) ORDERED, ADJUDGED AND DECLARED, pursuant to 28 U.S.C. Sec. 2201, that a criminal defendant, charged with a felony in Kings County and confined at any institution under the care, custody and control of the defendant Department of Correction be entitled

(a) to a hearing at which the People shall recommend what form of security if any, would secure the defendants' appearance in Court and, only if monetary bail is recommended, the People shall present evidence of the need therefor, and the reasons why alternative conditions of security should not be available; and at which the defendant shall be present and may present evidence cognizable by the court on the factors negating the need for money bail, which hearing shall be had, on written or oral demand, and on five days notice to the People, at any time after 72 hours after arraignment or as new evidence or changes in facts may justify thereafter;

(b) the prosecution shall have the burden of proving the need for monetary bail and shall state the reasons why non-financial conditions of release, as well as other financial alternatives prescribed by state statute (CPL Sec. 520.10) will not assure the accused's reappearance at trial.

(c) this evidentiary hearing must be given within five (5) days after a demand is made or at the next scheduled court appearance of the defendant whichever is sooner.

(d) the demand may be made orally in open court or in writing, pro se or by counsel.

(e) if the demand is made in writing it shall specify information sufficient to identify the defendant and shall also set forth the current conditions under which the defendant may be released and in the case of alleged new evidence or changes in circumstances, the new circumstances or evidence;

(f) pretrial incarceration of sixty days shall be a change in facts sufficient to justify a *de novo* bail hearing; and it is further

(4) ORDERED, ADJUDGED AND DECLARED that a criminal defendant is entitled to receive a written statement of the reasons for denying or fixing bail including the facts relied on and to have a *de novo* bail hearing upon five (5) days notice to the People, if he/she is held in custody without a written statement of reasons for the instant bail determination. . . .

8. The district court directed certain defendants to file with the court a plan for assuring privacy for conferences between an attorney and his incarcerated client. The court rejected plaintiffs' claim that conditions in Kings Coun-

## II.

The State on appeal urges that the final order of the court below in effect mandates a wholesale reform of the New York State bail system which constitutes an untoward interference with the state judicial system and violates established principles of comity and federalism. *O'Shea* v. *Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Younger* v. *Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). There is no doubt that this court in its two prior reversals of the court below considered that the orders issued there constituted an improper intervention in the internal procedures of state courts. The broad order of *Wallace II* provided that all detainees after six months be allowed to demand trial and be released on their own recognizance if not brought to trial within 45 days. In reversing, this court ruled that federal courts

> must limit their inquiry to the specific facts regarding a complaining petitioner. Relief from unconstitutional delays in criminal trials is not available in wholesale lots. Whether an individual has been denied his right to a speedy trial must be determined ad hoc on a case-by-case basis.

499 F.2d at 1351.

While the court below held that the issue of the effect of delay on the coercion of guilty pleas had to be determined on a case-by-case basis, it apparently considered the evidence developed at the hearing sufficiently compelling, despite the prior admonitions of this court, to mandate pretrial evidentiary bail hearings on demand. The order below, in thus proceeding to legislate and engraft new procedures upon existing state criminal practices affecting all felony inmates in Kings County confined in any institution under the care, custody and control of the Department of Corrections, so that pending as well as future bail applications are affected, necessarily

imposes upon us the duty of deciding the threshold question raised by the defendants—is the intrusion violative of the principles of comity and federalism as defined by the Supreme Court in *Younger* and its recent holdings which have broadened the doctrine of abstention.

In a recent explication of *Younger* in *Huffman* v. *Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), Mr. Justice Rehnquist, writing the majority opinion, reiterated that federal injunctions against the "state criminal law enforcement process" could be issued only " 'under extraordinary circumstances where the danger of irreparable loss is both great and immediate.' " Id. at 600, 95 S.Ct. at 1206, quoting from *Fenner* v. *Boykin,* 271 U.S. 240, 243, 46 S.Ct. 492, 70 L.Ed. 927 (1926). The Court again announced the twofold policy basis for non-intervention in state proceedings:

1) The recognition, both congressional and judicial, that federal courts should permit state courts to try state cases and that, if constitutional issues arise, the state court judges are fully competent to handle them, since they are bound by the Federal Constitution under Article VI.

2) The traditional doctrine that a court of equity should stay its hand when a movant has an adequate remedy at law.

Both of these factors were reiterated by Mr. Justice Powell in an even more recent opinion, *Schlesinger* v. *Councilman,* 420 U.S. 738, 754–56, 95 S.Ct. 1300, 1311–12, 43 L.Ed.2d 591 (1975). See also *Kugler* v. *Helfant,* 421 U.S. 117, 123–25, 95 S.Ct. 1524, 1530–31, 44 L.Ed.2d 15 (1975).

Although the court below did in its findings of fact note that state habeas relief was available to the plaintiff class with provision for appeal to the Appellate Division, there is no reference to the availability of this remedy in that part of the opinion which rejected the argument that principles of comity and fed-

ty tended to effectively coerce guilty pleas, on the ground that claims of coercion of guilty pleas are to be decided on a case-by-case basis. The court also concluded that a monetary

bail system does not constitute per se a violation of the equal protection clause of the Fourteenth Amendment. These rulings are not questioned on this appeal.

eralism precluded the issuance of the order on review here. The court below found *Younger* abstention inappropriate primarily because in that case and in *Samuels* v. *Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) a federal court sought to prevent the prosecution of a state criminal trial, while the issue here involved the necessity of revisions in bail proceedings in order to prevent improper pre-trial confinement, which would not be an issue on a defendant's trial on a criminal charge.[9]

■ The proposition that the principles underlying *Younger* are applicable only where the federal court is seeking to enjoin a pending state criminal prosecution is not supportable.[10] Certainly this court in *Wallace I* and *II* did not agree. In *Wallace I* this court warned that " 'under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts.' " 481 F.2d at 622.

More significantly, in *Huffman* v. *Pursue, Ltd., supra,* the Court broadened *Younger* abstention to preclude federal interference in certain state court *civil* actions in which the state had a particular interest.[11] This court had previously refused to intervene in pending bar association disciplinary proceedings in *Erdmann* v. *Stevens,* 458 F.2d 1205 (2d Cir.),

cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972), and, fortified by *Huffman,* that holding was reiterated in two subsequent holdings of this court in *Anonymous* v. *Association of the Bar of the City of New York,* 515 F.2d 427 (1975) and *Anonymous J.* v. *Bar Association of Erie County,* 515 F.2d 435 (1975). It would indeed be anomalous to hold that *Younger* abstention is applicable in certain civil actions in which the state has some concern but not to a bail application proceeding in which the people of the State of New York have a most profound interest. The assurance that a defendant who has been indicted for a crime be present to stand his state trial and be sentenced if convicted is patently of prime concern to the state.

The defendants here also rely upon *O'Shea* v. *Littleton, supra.* The plaintiffs in *O'Shea* brought a class action against two state court judges alleging that they had engaged in racially discriminatory bail and sentencing practices. Although the Court held as a threshold matter that the plaintiffs lacked standing to bring the action, it proceeded at considerable length to state that *Younger*-type abstention principles were in any event applicable. The Court considered that the order proposed by the Court of Appeals, which would have required continuous reporting on the

9. The district judge further commented that the plaintiffs were not seeking interference with a criminal trial or any pending bail application but merely a declaration of rights. Although the complaint here does not even seek an evidentiary hearing in its prayer for relief, the order appealed from is mandatory and orders the defendants to provide a new procedure set forth in the order to supplant existing practice. That can only be characterized as an interference with the state criminal process in both pending and future bail proceedings. The court's reference to *Steffel* v. *Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) is therefore not apposite.

10. In fact, the Supreme Court has recently stated: ". . . we now hold that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger* v.

*Harris* should apply in full force." *Hicks* v. *Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). The argument that plaintiff indictees in state criminal cases were denied the right to the assignment of counsel and were therefore entitled to mandatory injunctive relief was held to be without merit by this court in *Bedrosian* v. *Mintz,* 518 F.2d 396 (2d Cir. 1975). This court specifically rejected the contention that *Younger* v. *Harris* was not applicable since the assignment of counsel was merely collateral to the prosecution of the indictee appellants. *Id.* at 399.

11. The pending civil proceeding in *Huffman* v. *Pursue, Ltd.* was an action under a statute which provided that a place exhibiting obscene films was a nuisance. The state's interest there was in prohibiting the exhibition of pornography, and this interest was expressed in criminal statutes related to the nuisance statute under which the state was moving against the appellee. 420 U.S. at 604, 95 S.Ct. at 1208.

judges' bail and sentencing actions, would constitute an "ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* v. *Harris, supra,* and related cases sought to prevent." 414 U.S. at 500, 94 S.Ct. at 678. This is precisely the mischief created by the order below. Having provided for new bail hearing procedures which fix the time of, the nature of and even the burden of proof in the evidentiary hearings, the order would permit a pre-trial detainee who claimed that the order was not complied with to proceed to the federal court for interpretations thereof. This would constitute not only an interference in state bail hearing procedures, but also the kind of continuing surveillance found to be objectionable in *O'Shea.*

The plaintiffs on appeal urge that the *O'Shea* dicta are inapplicable in light of a more recent opinion of the Supreme Court, *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), decided February 18, 1975. We cannot agree and find that case distinguishable factually and legally from the one on appeal. In *Gerstein,* two state prisoners commenced a section 1983 action seeking both declaratory and injunctive relief to enforce their constitutional right to a judicial hearing on the issue of probable cause for detention. They had been arrested in Dade County, Florida under a prosecutor's information which, according to the procedure of that state, precluded any right to a preliminary hearing to determine if continued detention was justified by probable cause. The district and circuit courts had ordered the Dade County defendants to give the plaintiffs an immediate preliminary

hearing and also ordered them to submit a plan, subsequently adopted, providing for preliminary hearings in all cases instituted by information. Such hearings were to be fully evidentiary and adversary in nature, with the right of the defendant to call and cross-examine witnesses. While the Court held intervention appropriate, it disagreed with the holding on the merits below that evidentiary hearings were constitutionally mandated.

The reasoning of the *Gerstein* Court on the intervention issue does not materially assist the plaintiffs here. With respect to the issue of comity and federalism, the plaintiffs rely on footnote 9 in the *Gerstein* opinion, 420 U.S. at 108, 95 S.Ct. at 860, which is set forth in its entirety in the margin.[12] Although this language is certainly facially supportive of the plaintiffs' position here, it is elementary that what the Court said must be viewed in the light of the factual and legal setting the Court encountered. As we have already noted and as plaintiffs concede, the *Younger* doctrine is based not only on a reluctance to interfere with state court processes, but also on the refusal to afford equitable relief when adequate remedies at law exist. It is significant, therefore, that the Supreme Court's opinion in *Gerstein* emphasizes at the outset that the federal plaintiffs there had no right to institute state habeas corpus proceedings except perhaps in exceptional circumstances and that their only other state remedies were a preliminary hearing which could take place only after 30 days or an application at arraignment, which was often delayed a month or more after arrest. 420 U.S. at 107, 95 S.Ct. at 859. We do not consider this discussion feckless.

---

**12.** "The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger* v. *Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of trial on the merits. *See Conover* v. *Montemuro,* 477 F.2d 1073, 1082 (CA3 1973); cf. *Perez* v. *Ledesma,* 401 U.S. 82 [91 S.Ct. 674, 27 L.Ed.2d 701] (1971); *Stefanelli* v. *Minard,* 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138] (1951)."

In sharp contrast with the Florida practice, New York procedures, as indicated in our summary of the facts, provide that a pre-trial detainee may petition for a writ of habeas corpus in the Supreme Court (N.Y. C.P.L.R. § 7002(b)(5)), that its denial may be appealed (N.Y. C.P.L.R. § 7011) and that an original application for habeas may be made in the Appellate Division of the Supreme Court (N.Y. C.P.L.R. § 7002(b)(5)). In addition, in *Conover v. Montemuro,* 477 F.2d 1073 (3d Cir. 1973), cited by the Supreme Court in *Gerstein,* as we point out in footnote 12 *infra,* both the majority and concurring opinions emphasized the unavailability of state remedies. Hence, the language in footnote 9 of *Gerstein* must be read in the full context of the *Younger* rule, which rests on principles of equity as well as comity. When so considered, it is clearly not decisive of this issue.[13]

In addition, we note that the district court conclusion in the *Gerstein* case that *Younger* did not apply was specifically coupled with the finding that Florida had consistently held that detainees such as the plaintiffs in that case were not entitled to a preliminary hearing of any kind. 332 F.Supp. 1107, 1111–12 (S.D. Fla.1971). This is important since to come within the *Younger* rubric, as re-emphasized in *Huffman v. Pursue, Ltd.* and *Schlesinger v. Councilman, supra,* a plaintiff must establish "irreparable harm." However, in the record before us there is no indication that any plaintiff ever even asked for an evidentiary hearing. On the contrary, the record indicates that two state judges not only testified that no evidentiary hearing on a bail application had ever been requested by anyone, but that if one had been demanded it would have been granted.[14] In fact, in Special Term, Part 10 in Kings County evidentiary-type hearings are now granted. It is clear that the New York statutory provisions afford unlimited opportunities for bail applications[15] and, while plaintiffs characterize them as constitutionally suspect since the court below condemned their perfunctory application, there was in fact no finding that the statutes are constitutionally vul-

**13.** We recognize, of course, that exhaustion of state judicial remedies is not required in actions brought under section 1983. *Preiser v. Rodriquez,* 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This rule does not, however, alter the traditional equitable principle that a plaintiff seeking equitable relief must demonstrate that no adequate remedy at law exists and that, absent injunctive relief, he will suffer irreparable injury. This point is made clear in *Allee v. Medrano,* 416 U.S. 802, 814, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). In *Potwora v. Dillon,* 386 F.2d 74, 77 (2d Cir. 1967), Judge Friendly said that the Supreme Court, in announcing the non-exhaustion rule for 1983 cases,

> surely had no intention to abrogate in civil rights cases the historic rule . . . that suits in equity shall not be sustained in courts of the United States "in any case where a plain, adequate and complete remedy may be had at law."

Accord, *Appalachian Volunteers, Inc. v. Clark,* 432 F.2d 530, 537 (6th Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971); *Engelman v. Cahn,* 425 F.2d 954, 958 (2d Cir. 1969), cert. denied, 397 U.S. 1009, 90

S.Ct. 1238, 25 L.Ed.2d 422 (1970); *Wright v. McMann,* 387 F.2d 519, 523 (2d Cir. 1967); *Silverman v. Browning,* 359 F.Supp. 173, 176–77 (D.Conn.1972), aff'd on the opinion below, 411 U.S. 941, 93 S.Ct. 1927, 36 L.Ed.2d 406 (1973). See also *Bradley v. Judges of Superior Court,* 372 F.Supp. 26 (C.D.Cal.1974); *Harrington v. Arceneaux,* 367 F.Supp. 1268 (W.D.La. 1973).

In *Conover v. Montemuro,* 477 F.2d 1073, 1081 (3d Cir. 1973), a 1983 case relied upon in the opinion below and by the plaintiffs here, Judge Gibbons for the majority noted that the court knew of no Pennsylvania procedure which might permit a test of the legality of the adjudication of delinquents. It seems fair to assume that, had there been some such procedure, or if, on the remand ordered there, one were discovered, equitable relief would have been held to be barred, as suggested by Judge Adams in his concurring opinion, 477 F.2d at 1092, wherein state habeas was mentioned as a possible legal remedy affording adequate relief.

**14.** Judge Judd's order does not *require* that an evidentiary hearing always be held; under the order a hearing need be held only when the detainee *requests* it. We repeat that none of the plaintiff class has even made the request.

**15.** See footnote 4 *supra.*

nerable but rather that the attorneys and judges are proceeding without assuring plaintiffs due process. We have found no New York cases construing the New York bail procedure statutes to deny plaintiffs the evidentiary hearing mandated [16]; on the contrary, in *United States ex rel. Shakur* v. *Commissioner of Corrections,* 303 F.Supp. 303, 308 (S.D.N. Y.), aff'd, 418 F.2d 243 (2d Cir. 1969) (*per curiam*), cert. denied, 397 U.S. 999, 90 S.Ct. 1144, 25 L.Ed.2d 408 (1970), Judge Palmieri considered the necessity of an evidentiary hearing on application for bail in the New York County Supreme Court and said that it was a matter for the state court's discretionary decision. In affirming Judge Palmieri's opinion this court characterized it as "a careful opinion. . . ." 418 F.2d at 244.

Plaintiffs argue that the intrusion upon the domain of the state sought in *O'Shea* was much more significant than that sought here, which they argue is comparable to that approved in *Gerstein.* Since the federal courts have not been loathe to interfere where charges of racial bigotry are bruited, the refusal to intercede in *O'Shea* on grounds of comity and federalism is indeed significant. But we cannot agree that the order below is less pervasive than in *Gerstein.* Here, the federal court did not invite state officials to submit a plan for a bail hearing which would be consistent with due process requirements. It rather directed its own procedures for state hearings in considerable detail. This constitutes, in our view, federal judicial legislation which is not only offensive to state sensibilities but is contrary to the admonition in *Gerstein* on this very point:

> There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will

be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States.

420 U.S. at 123, 95 S.Ct. at 868.

■ In view of these decisive distinctions between *Gerstein* and the present case, we consider that it does not provide assistance to the plaintiffs here but, on the contrary, strengthens the stand of the defendants. We cannot, moreover, agree that the *Gerstein* Court intended to overrule *O'Shea* in a footnote which does not even discuss it. Indeed, the Court's later opinion in *Huffman* evinces an even greater respect for comity by extending it to state civil litigation in which there is a state interest. In sum, we hold that, under *Younger* and its further explication in recent Supreme Court cases, the order entered below, insofar as appealed from, must be reversed. The order created an intrusion upon existing state criminal process which is fissiparous and gratuitous and it further ignored the prior rulings of this court on appeals in this case.

We would be remiss if we did not indicate, as this court has before on appeals in this case, that we are conscious of the concern of the court below for the conditions which the hearings it has conducted have brought to the attention of the public. The court below noted that there are judges, prosecutors and Legal Aid attorneys who are striving valiantly to achieve prompt trials. A motivating factor in the recognition of urgency and in the improvements which have already occurred is undoubtedly the activity of Judge Judd. However, we are not ombudsmen charged with the responsibility of reforming the state penal system.[17]

---

**16.** Several New York cases suggest that a hearing might be required by a New York court upon application therefor. See *People ex rel. Singer* v. *Corbett,* 26 A.D.2d 770, 271 N.Y.S.2d 921, 923 (4th Dep't 1966); *People* v. *Terrell,* 62 Misc.2d 673, 309 N.Y.S.2d 776, 786 (Monroe Cty. Ct. 1970); *People* v. *Bach,* 61

Misc.2d 630, 306 N.Y.S.2d 365, 368 (Dutchess Cty. Ct. 1970).

**17.** At the outset of the opinion below, the court said:

> Governor Hugh L. Carey, in his inaugural address on January 1, 1975, said that

The hearings held below establish that pre-trial delay is due to a variety of factors, not the least of which are the staggering increase in crime in Kings County, lack of facilities, lack of judges on the bench and counsel at the side of those accused of crime, plus the increasing demands on the time of those charged with the responsibility of assuring prompt and even-handed justice. Because of our position of abstention we do not discuss the merits here but do note the observation of the Supreme Court in a comparable situation in *Gerstein* :

Criminal justice is already overburdened by the volume of cases and the complexities of our system. The processing of misdemeanors, in particular, and the early stages of prosecution generally are marked by delays that can seriously affect the quality of justice. *A constitutional doctrine requiring adversary hearings for all persons detained pending trial could exacerbate the problem of pretrial delay.*

420 U.S. at 122 n. 23, 95 S.Ct. at 867 n. 23 (emphasis added).

Reversed insofar as appealed from.

"[T]he criminal justice system in New York does not work."

This memorandum deals with another effort to enlist the help of federal courts in making the state criminal justice system work better.