**Paula CICERO et al., Plaintiffs,**

v.

**Ennis J. OLGIATI, Individually and as Chairman of the New York State Board of Parole, et al., Defendants.**

**No. 75 Civ. 2059.**

United States District Court, S. D. New York.

Nov. 24, 1976.

David Rudenstine, Project on Sentencing and Parole, New York Civil Liberties Union, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for defendants; Jules E. Orenstein, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Defendants move for a certification under 28 U.S.C. § 1292(b) permitting immediate appeal from the court's order of March 17, 1976, denying in part their motion to dismiss this case. (Familiarity with the earlier opinion at 410 F.Supp. 1080 is assumed.) Certification is proper if the district court is of the "opinion" that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Bearing in mind the fact that this motion is addressed to the discretion of the district court; that the usual requirement of a "final order" as a predicate for appellate jurisdiction is designed to implement the policy against piece-meal litigation; and that this circuit applies a rigorous definition of what a "controlling question of law" means, see *Brown v. Bullock,* 294 F.2d 415, 417 (2d Cir. 1961); *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 525 (S.D.N.Y.1973), we consider each of the certifiable questions as proposed by the defendants.

"(1) Under the doctrine of *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), should the within action be dismissed for plaintiff's failure to exhaust their State remedies?" .

■ This question can better be asked as follows: May state prisoners who challenge the method by which parole release decisions are made, but who do not seek speedier release or even new parole hearings, proceed under § 1983 for declaratory relief or are their claims so close to the "core of habeas corpus jurisdiction" as set forth in *Preiser* that they must be pursued in accordance with the requirement of exhaustion of state remedies contained in 28 U.S.C. § 2254?

There is no doubt that plaintiffs have made no effort to exhaust state remedies, and it appears that the state courts would entertain these claims for relief. See, e. g., *Solari v. Vincent,* 46 A.D.2d 453, 363 N.Y.S.2d 332 (2d Dept.), dismissed as moot, 38 N.Y.2d 835, 382 N.Y.S.2d 48, 345 N.E.2d 591 (1976); *Cummings v. Regan,* 45 A.D.2d 222, 357 N.Y.S.2d 260 (4th Dept. 1974). An argument could be made that the underlying purpose of the original enactment of what became § 1983 would not be thwarted by requiring exhaustion of state remedies in this situation, where there not only is an available statutory remedy in the state courts under Article 78 but where there is no indication that in practice the state courts would be biased against, indifferent to or neglectful of plaintiffs' constitutional claims. *Monroe v. Pape,* 365 U.S. 167, 174–80, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ However that may be, certification of the question would not materially advance the litigation, nor is the question open to substantial doubt. In *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) the Court held an action for a declaratory judgment that good time credits had been improperly taken away from a state prisoner appropriate under § 1983 as interpreted by *Preiser.* Under *McDonnell,* then, a prisoner would be entitled to seek a declaratory judgment on whether he had been wrongly denied parole; *a fortiori* the court has jurisdiction under § 1983 of an action for declaratory relief for violation of federal due process rights in the parole decision process. In *Haymes v. Regan,* 525 F.2d 540 (2d Cir.

1975) the Court of Appeals decided on the merits a constitutional challenge to certain aspects of New York State's parole release procedures brought under 42 U.S.C. § 1983. Had it been doubtful of its own or the district court's jurisdiction to decide these questions, it would have been under a duty to decide the jurisdictional point. See F.R. Civ.Proc. 12(h)(3); *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 979 (2d Cir. 1975); *Williams v. United States,* 42 F.R.D. 609, 612 (S.D.N.Y.1967).

Accordingly, this issue is inappropriate for certification.

"(2) Is it proper to convene a three-judge court in this certified class action seeking *inter alia,* to void Section 213 of the New York Correction Law, where, although declaratory relief is facially sought, a final decree would of necessity result in injunctive or other coercive type of relief."

■ This does not present a question as to which defendants have shown any substantial ground for difference of opinion. That plaintiffs are proceeding as a class is without significance and is frequently the case in actions for declaratory relief. The defendants have cited no case nor has research disclosed one in which failure to convene a three judge court to decide a class action seeking declaratory relief alone has been held to be error. It is worth noting in this regard that Congress has recently repealed 28 U.S.C. § 2281 so as to eliminate altogether the requirement of a three judge court where the constitutionality of a state statute is challenged under § 1983. Public L. 94–381, 94th Cong., August 12, 1976. Although this change in law does not apply to "any action commenced on or before the date of enactment," it indicates that expansion of the classes of cases in which three judge courts are convened under the former statute would not be in accordance with congressional intent.

"(3) Should the Federal Court decline to exercise jurisdiction of this 42 U.S.C. 1983 action under the principles of abstention and federalism, as recently enunciated in *Rizzo v. Goode* [423 U.S. 362, 96 S.Ct. 598,

46 L.Ed.2d 561], 44 U.S.L.W. 4095. (January 20, 1976) and *Carey v. Sugar,* [425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587] 44 U.S.L.W. 4416 (March 24, 1976)?"

Defendants raise two questions here which must be considered separately.

### A. *Traditional Abstention*

■ The traditional doctrine of abstention as articulated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Carey v. Sugar, supra,* requires the federal court to defer its own action where a state court interpretation of a state *statute* might control resolution of federal constitutional questions. Although the New York courts have been receptive to *constitutional* attacks on state parole release decision making procedures in recent years, the authoritative construction of the New York State *statute* remains that of the Court of Appeals in *Hines v. New York State Bd. of Parole,* 293 N.Y. 254, 56 N.E.2d 572 (1944) and *Matter of Briguglio v. New York State Bd. of Parole,* 24 N.Y.2d 21, 29, 298 N.Y.S.2d 704, 710, 246 N.E.2d 512 (1969), which indicate that the Parole Board is empowered to exercise in full the vast discretion granted it under the statute plaintiffs now challenge. That the state courts are now receptive to the federal constitutional claim does not justify a federal court in deferring decision on such claims. *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

■ The defendants have suggested no construction of Section 213 which would either resolve, or substantially modify plaintiffs' constitutional challenge. Moreover, there are no cases of which the court is aware now percolating through the state courts and raising these issues, the possible outcome of which should stay this court's hand at resolving clear federal constitutional issues. Cf. *Carey v. Sugar, supra,* 425 U.S. at 78, 96 S.Ct. 1208.

Accordingly, the question whether this court should abstain from deciding this case under *Carey v. Sugar* ought not be certified.

# 1218

## B. *Comity—Abstention*

 Under this doctrine the federal courts abstain from deciding federal constitutional questions not because an imminent state court construction of a state statute might eliminate the need to decide a federal constitutional question, but rather because an adjudication or decree might offend principles of federalism which foster the proposition that the states (and state courts) should put their own houses in order. The doctrine has two facets. In such cases as *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) a federal court abstains from decision because of the pendency of state proceedings involving the federal plaintiff which afford an immediate opportunity for resolution of the federal claims. Not only is injunctive relief precluded by equitable principles since there is an adequate remedy at law, but declaratory relief is also barred because any federal ruling on the substantive constitutional claim (regardless of the form of relief granted) might reflect an unwarranted lack of confidence in the state court's ability to decide the claim. Compare *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) with *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In the instant case there are no pending state proceedings by or against these plaintiffs in which their constitutional claims could be decided.

Distinct from *Younger,* in cases like *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), *Rizzo v. Goode, supra,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 and *Wallace v. Kern,* 520 F.2d 400 (2d Cir. 1975) where there were no pending state proceedings, the courts in applying principles of comity have not been primarily concerned with the substantive constitutional ruling per se but with the nature of the relief to be afforded. Federal adjudica-

tion of a constitutional claim not before a state court cannot reflect negatively on the state court system; an injunctive decree may, however, inappropriately involve a federal court in the administration of institutions central to the state's sovereignty. Thus, for example, in *Rizzo* the district court's injunction, though nominally requiring only that the police department submit for court approval revised procedures for dealing with citizens' complaints, in fact required the police to comply with some fourteen pages of "guidelines" devised by the district court, as Mr. Justice Rehnquist noted, in "considerable detail." 423 U.S. at 364, note 2, 96 S.Ct. 598, note 2. And in reversing Judge Judd's injunctive decree in *Wallace v. Kern,* the Court of Appeals echoes this concern, noting that:

> "the federal court did not invite state officials to submit a plan for a bail hearing which would be consistent with due process requirements. It rather directed its own procedures for state hearings in considerable detail. This constitutes, in our view, federal judicial legislation which is . . . offensive to state sensibilities." 520 F.2d at 408.

The procedural posture of these cases is also significant in that injunctive relief had already been fashioned before the higher courts ruled on the abstention question, which would not be the case if certification were allowed in this case at this time.

 Even in *O'Shea v. Littleton,*[1] where the court affirmed the dismissal of a complaint before trial, plaintiffs had sought injunctive relief against the operations of the state's judicial, prosecutorial and police systems. The Court noted that periodic reporting to and supervision by the federal court would be a necessary aspect of relief and that such injunctive relief would have the inevitable effect of involving the federal court in day-to-day administration of the

---

1. In addition to the distinguishing factors noted in the text, in *O'Shea* the Court held that plaintiffs lacked standing to sue, and suggested in *Rizzo* that standing was doubtful, because the possible injury to plaintiffs was so speculative. Where injury is so speculative injunctive relief is inappropriate on the equitable principle that the scope of relief not exceed the evil which must be remedied, particularly where the injunction sought is one which will be severely disruptive to the state defendants. In the instant case, as in *Wallace v. Kern, supra,* there is no question as to plaintiffs' standing.

state courts and in situations clearly prohibited by the *Younger* line of cases, that is, in pending state prosecutions.

In short, *Wallace, O'Shea* and *Rizzo* all involved applications for or grants of injunctive relief which required detailed and ongoing supervision of state agencies or courts. The differences between injunctive and declaratory relief are substantial and have been recognized as significant for purposes of deciding whether or not to abstain from decision:

> "the express purpose of the Federal Declaratory Judgment Act [is] to provide a milder alternative to the injunctive remedy . . . even though a declaratory judgment has the 'force and effect of a final judgment' . . . it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt." *Steffel v. Thompson, supra,* 415 U.S. at 467, 471, 94 S.Ct. 1209, at 1219, 1221, 39 L.Ed.2d 505 (1974).

The question which defendants seek to certify, in effect, asks whether a declaratory judgment on some or all of plaintiffs' claims would necessarily violate these principles of comity. In light of the differences between declaratory and injunctive relief, the question must be answered in the negative, and does not present an appropriate matter for certification.

■ Plaintiffs' claims fall into two categories: those which attack the statute itself, either as too vague or as requiring that decisions be made which cannot be made rationally and nonarbitrarily in individual cases; and those which attack the practices of the State Board of Parole on grounds of race discrimination and other forms of arbitrary and impermissible actions. The latter type of claim is comparable to many other attacks which have been made in recent years against various aspects of the states' administration of their laws. See, e. g., *McRedmond v. Wilson,* 533 F.2d 757 (2d Cir.

February 7, 1976). A declaratory judgment that such practices are illegal and must cease would not interfere with the Board's lawful exercise of discretion under the state statute, nor require federal court oversight of day-to-day administration of the parole system. An obvious corollary is that the challenge lacks the potential to involve the federal court in any ongoing criminal investigation or prosecutions, thus distinguishing it from *Rizzo, O'Shea* and *Wallace*. Accordingly, these claims seem appropriate for federal adjudication.[2]

■ The first type of claim obviously has broader implications, and should plaintiffs prevail even a declaratory judgment will have the effect of calling into question the Board's power to parole prisoners at all, and if so, by what standards. Although the parole release process is not "akin" to a criminal prosecution in the same way that a civil proceeding to enforce a quasi-criminal statute is, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–05, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), any uncertainty in this area will undoubtedly have an "echo" effect insofar as sentencing practices are concerned. See *United States ex rel. Johnson v. Chairman, New York State Bd. of Parole,* 500 F.2d 925, 933 (2d Cir. 1974), vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1975). However, this problem is no different in kind than that which arises whenever a federal court declares unconstitutional or otherwise unenforceable any state law, and the court has ample means at its disposal to avoid creating havoc or confusion in the state parole system, e. g., by staying entry of judgment for a reasonable period of time in order to permit the Board to take remedial steps whether by applying to the legislature for corrective legislation or otherwise. Cf. *Almenares v. Wyman,* 453 F.2d 1075, 1088 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

■ It would, in fact, be improper to refuse to adjudicate these claims, simply because their favorable resolution might re-

---

2. Because these claims are undoubtedly appropriate for trial, there is some doubt as to how "materially" appellate resolution of the comity question with respect to the other claims for relief will advance the ultimate termination of the litigation.

quire amendment of state law, or because the state courts may be available to decide them. See *Morgan v. LaVallee*, 526 F.2d 221, 223 (2d Cir. 1975). As noted in the opinion of March 17th, " 'one having a bona fide claim is normally entitled as a matter of right to have the claim adjudicated by a federal tribune'." Although the court in *Wallace* relied on the availability of state court proceedings to challenge illegal conditions of pretrial confinement as an equitable basis for district court abstention, its reliance must be placed in context: Injunctive relief on a class basis had repeatedly been found improper in *Wallace*, because of the *Wingo v. Barker* requirement that alleged violations of speedy trial rights be determined on an individual basis. The *Wallace* court held only that since there were available state court remedies for individuals deprived of speedy trials, the need for injunctive relief was diminished, and an injunction could not be justified where it had such a great potential for continued surveillance of the state court and for federal intervention in the prosecutions themselves.

The possible availability of a state court proceeding in which the present constitutional issues could be decided does not require abstention; in effect, such a view would read into § 1983 a prerequisite that available state remedies be exhausted, and the Supreme Court has disclaimed any intent to overrule this aspect of *Monroe v. Pape, supra*. *Huffman v. Pursue Ltd., supra*, 420 U.S. at 609 n. 21, 95 S.Ct. 1200 (1975). Moreover, the absence of an available remedy at law is not an essential prerequisite to the grant of declaratory relief. See, *id.* at 602–03, 95 S.Ct. 1200.

Finally, it is premature to assume that plaintiffs will prove the constitutional claim that Section 213 is inherently incapable of rational achievement, or that it is unconstitutionally vague on its face. It would be improper to ask the court of appeals to decide a difficult constitutional issue if that issue ultimately will not need to be resolved in order to dispose of the case.

For the foregoing reasons, the question which defendants seek to certify does not appear to be a controlling question of law open to substantial disagreement and whose resolution would materially advance the litigation.

Accordingly, this question shall not be certified.

"(4) Is there a constitutionally cognizable interest in liberty at stake in New York Parole consideration proceedings such that the protections afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution attach thereto, as are the cases flowing from *Morrissey v. Brewer*, 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972) and *Wolff v. McDonnell*, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974)?"

This is not a question as to which there is a substantial difference of opinion in this circuit. *United States ex rel. Johnson v. Chairman*, 500 F.2d 925, *supra*, and *Haymes v. Regan, supra*, both held expressly that a New York state prisoner's interest in whether or not he is granted parole is entitled to due process protection. Accordingly, this is not a proper question for certification.

"(5) Are the standards enunciated in cases such as *Grayned v. City of Rockford*, 408 U.S. 104 [92 S.Ct. 2294, 33 L.Ed.2d 222] (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156 [92 S.Ct. 839, 31 L.Ed.2d 110] (1972); *Coates v. Cincinnati*, 402 U.S. 611 [91 S.Ct. 1686, 29 L.Ed.2d 214] (1971); *Giaccio v. Pennsylvania*, 382 U.S. 399 [86 S.Ct. 518, 15 L.Ed.2d 447] (1966); *Cramp v. Board of Public Instruction of Orange County, Florida*, 368 U.S. 278 [82 S.Ct. 275, 7 L.Ed.2d 285] (1961); *Garner v. Louisiana*, 368 U.S. 157 [82 S.Ct. 248, 7 L.Ed.2d 207] (1962); and *Louisiana v. United States*, 380 U.S. 145 [85 S.Ct. 817, 13 L.Ed.2d 709] (1965), the proper criteria to measure whether § 213 of the New York Correction Law and companion statutes and regulations are void for vagueness?"

It is the opinion of the court that there are no reasonable grounds to doubt

that these standards are properly applied wherever a state statute is challenged for vagueness. These cases emphasize not only the need to give fair notice to potential defendants of what is prohibited, but to control the actions of law enforcement and other executive officers in enforcing and executing the law. This concern is at issue here. Defendants have understandably not suggested an applicable standard other than those expressed in these decisions. Moreover, an advance appeal would not materially move the litigation on, since this affects only one of many triable issues.

"(6) Does the decision of the Court of Appeals for the Second Circuit in *Haymes v. Regan*, 525 F.2d [540] 541, declining to mandate the disclosure of the New York Parole Board's release criteria, by implication, reject the notion that § 213 of the Correction Law is void for vagueness?"

For reasons discussed in the earlier opinion, there is no substantial doubt that the *Haymes v. Regan* court did not consider the question of whether or not the statute was unconstitutionally vague. The court was not asked by the parties to consider that question, but addressed itself only to the requirements of procedural due process in two specific areas. It cannot be assumed that the court in fact considered it since the question was not one going to its subject matter jurisdiction nor in any other way a question which the court was duty bound to consider regardless of whether it was raised by the parties. Moreover, the holding in *Haymes* was peculiarly qualified, and left the door open for a different holding on whether or not due process required that the criteria for decisionmaking be revealed, if, in years following, Section 214's requirement that a statement of reasons be provided did not insure rational and appropriate decisionmaking. It is now over a year since the court of appeals' decision in *Haymes*, and almost a year and one-half after passage of Section 214. By the time this case comes to trial, it is possible that what due process required "at the time" of the *Haymes* decision will appear to have been insufficient to protect prisoners against arbitrary use of the Board's discretionary power.

The motion to certify the order denying in part defendants' motion to dismiss the complaint is denied. In light of that disposition, the motion for a stay is also denied.

It is so ordered.