**Juan TORRES IRIZARRY, Plaintiff,**

v.

**Hon. Federico TORO GOYCO, Judge of the District Court of Puerto Rico, Guayanilla Part, et al., Defendants.**

Civ. No. 76–552.

United States District Court,
D. Puerto Rico.

July 12, 1976.

---

**68.** The common law fraud count having been dismissed, plaintiffs' prayer for punitive damages need not be considered.

Juan Torres Irizarry, the plaintiff in this case, is the Mayor of the town of Guayanilla, Puerto Rico, and by his own statements, "a civic leader in said Municipality for many years". Defendant, Hon. Federico Toro Goyco, is a Judge of the District Court of Puerto Rico, Guayanilla Part. Codefendant, Hon. Arturo Cintron Garcia, is a Judge of the Superior Court of Puerto Rico, Ponce Part. Codefendant, Hon. Salvador Casellas, is described as ". . . a public officer and a Member of the Cabinet of the Governor of Puerto Rico, and is in charge of all the moneys paid to the Government of the Commonwealth of Puerto Rico, including the fines imposed by the Courts of Puerto Rico".

## FACTUAL BACKGROUND

The complaint states the following facts as allegedly giving rise to the present cause of action:

"STATEMENT OF THE CASE

A.

Plaintiff's trial in the District Court of Puerto Rico, Guayanilla's Part.

The plaintiff Juan Torres Irizarry filed in the District Court of Puerto Rico, Guayanilla's Part, a complaint against Wilfredo Ruiz for the crime of petit larceny consisting in stealing a property belonging to the Municipality of Guayanilla. The plaintiff was called as witness, but he never testified because the Prosecuting Attorney did not use him as witness. The prosecutor used other witnesses, and on the basis of the testimonies of said witnesses, the Judge acquitted the defendant Wilfredo Ruiz, and ordered a recess of the Court, and went back to his chambers.

When the plaintiff came out of the witness' room, he learned that the Judge had acquitted the defendant Wilfredo Ruiz, and he made the following remark in regard to the acquittal of the defend-

Dr. Santos P. Amadeo, Río Piedras, P.R., for plaintiff.

Secretary of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Plaintiff herein alleges that this Court has jurisdiction over the instant case pursuant to the provisions of Title 42, United States Code, Section 1983 and its jurisdictional counterpart, Title 28, United States Code, Section 1343(3). The First, Fifth and Ninth Amendments to the Constitution of the United States, together with several cases of the Supreme Court of the United States,[1] have been pled as jurisdictional grounds in the instant case.

1. *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Carafas v. La-vallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); *Fi-swick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

ant: "*This is the kind of justice imparted by this Judge in this Court.*" Because of this remark, heard by the judge, or because somebody told him of said remark, the judge ordered plaintiff's arrest. The plaintiff was brought before the Judge of the Court, Hon. Federico A. Toro Goyco and sentenced for contempt of court for thirty days imprisonment. Said sentence was modified thereafter and the plaintiff was sentenced to the payment of a fine of One Hundred Dollars ($100.00), plus the costs, or to serve in prison one day for every five dollars he failed to pay.

### B.

Removal of plaintiffs' case by appeal, certiorari, or under Rule 192 of the Rules of Criminal Procedure to the Superior Court of Puerto Rico, Ponce Part.–

The plaintiff removed his case to the Superior Court of Puerto Rico, Ponce Part, by filing a document which he named "Appeal, Writ of Certiorari, or Motion Under Rule 192 of the Rules of Criminal Procedure of Puerto Rico." The Judge [2] affirmed the judgment of the lower Court for reasons, which are not necessary to discuss in this case. Nevertheless, the Judge made the following statement concerning the appellant, who is Mayor of the City of Guayanilla, Puerto Rico, and the plaintiff in this case:

> "*The bad tradition that made the Mayors of Puerto Rico in omnipotent figures, to such an extent that they feel capable of intervening in the judicial functions of these Courts, fortunately without any possibility of resurrection.*" (Emphasis supplied).

### C.

—*Certiorari filed in the Supreme Court of Puerto Rico.*–

On March 8, 1976, the plaintiff filed in the Supreme Court of Puerto Rico a writ of certiorari attacking on statutory and constitutional grounds the judgment of the Superior Court of Puerto Rico, Ponce Part, on the ground that the decision sustaining the judgment of the District Court of Puerto Rico, Guayanilla Part, deprived the plaintiff of several constitutional rights guaranteed by the Federal Constitution.

The Supreme Court of Puerto Rico denied the writ of Certiorari, without giving any reasons, on April 1, 1976 (Case No. 0–76–105)."

### ARGUMENTS

Plaintiff would like us to declare null and void his judgment and conviction as it was obtained and upheld in the Commonwealth Courts on three grounds, to wit: (1) that there was no contempt of court because when the incident occurred the court was not in session; (2) that even assuming the existence of contempt, ". . . the Court had no jurisdiction because it did not give the plaintiff a hearing where the plaintiff could defend himself, and where the Court could consider if such words spoken by the plaintiff constituted contempt of court"; (3) that the words pronounced by plaintiff constituted a lawful exercise of the right to criticize the Court, guaranteed by the First Amendment to the Constitution of the United States and that, therefore, the punishment imposed by the Court constitutes a punishment for the exercise of a constitutional right.

Plaintiff also seeks an injunction against defendants, the Honorables Toro Goyco and Cintron Garcia, ordering them to strike from the records of the courts presided by defendants, (District and Superior Courts of Puerto Rico–Guayanilla and Ponce Parts), any reference to the trial, appeal, conviction and sentence of plaintiff in both courts. It is also requested that we order said defendants to deliver to this Court "All records, documents, entries, references and papers relative to plaintiff's trial, conviction and sentence in Criminal Case No. 75–543 (contempt of court) filed before the District Court of Puerto Rico, Guayanilla Part, and in Civil Case No. CS–76–120, filed before the Superior Court of Puerto Rico, Ponce

2. This is codefendant herein, Hon. Arturo Cintron Garcia. (our footnote).

Part, in order that this Court may determine their final disposition."

Plaintiff also prays that we issue an injunction against codefendant Hon. Salvador Casellas, Secretary of the Treasury of the Commonwealth of Puerto Rico, ordering him to return the amount of One Hundred Dollars and Seventy Five Cents ($100.75), which represents the fine and costs imposed by defendant, Hon. Toro Goyco, for contempt of court in the above mentioned case.

We are also requested to order defendant Toro Goyco to pay plaintiff the amount of Fifty Thousand Dollars ($50,000) for "physical and moral damages, caused him by said Judge's conduct previously described in this Petition."

Finally, an order to show cause is requested to order defendants to come forth and demonstrate why we should not grant plaintiff the relief requested in his petition.

## ANALYSIS

█ Plaintiff's first two arguments as to the nullity of the contempt judgment and conviction, to wit: (1) that no contempt existed; and (2) that the court had no jurisdiction, as they have been presented to this Court, cannot be entertained by us. They are matters hinging upon the contempt statutes of the Commonwealth of Puerto Rico[3] or the power of its courts to punish for contempt. They have been presented to the highest court of the Commonwealth, which disposed of plaintiff's contentions by denying the writ of certiorari. Thus, in this case there exists matters of state law which have been presented to the highest state court and adjudicated against plaintiff herein. It is a well settled proposition which prays that the state courts are the final authority on matters of state law. *Scripto, Inc. v. Carson*, 326 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960). (See also

Wright, *Law of Federal Courts*, Section 107–1970 ed.).

Plaintiff also claims that the contempt judgment in the present case stands in violation of the First, Fifth and Ninth Amendments to the Constitution of the United States. Thus, this action is purportedly brought pursuant to Section 1983 of Title 42, United States Code, which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[4]

█ At the outset, we must state that Section 1983, supra, was not intended to be used as a substitute for the right of appeal, or to collaterally attack a final judgment by the highest court of a state or to relitigate issues which it decided. *Coogan v. Cincinatti Bar Assn.*, 431 F.2d 1209 (C.A. Ohio 1970). See also, *Rodes v. Municipal Authority*, 409 F.2d 16, (3 Cir. 1969), cert. den. 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 114, reh. den. 396 U.S. 950, 90 S.Ct. 377, 24 L.Ed.2d 256. In the case at bar, plaintiff himself states that the Supreme Court of Puerto Rico was presented with the statutory and constitutional claims. Specifically, he asserts that the certiorari was filed "on the ground that the decision sustaining the judgment of the District Court of Puerto Rico, Guayanilla Part, deprived the plaintiff of several constitutional rights guaranteed by the Federal Constitution".

█ It is obvious that the Federal constitutional claims were presented to the Puerto Rico Supreme Court for its decision. Thus, under *England v. Louisiana State*

---

**3.** Plaintiff does not mention under which statutes the contempt conviction was allegedly obtained and we cannot supply this data.

**4.** Title 28, United States Code, Section 1343, confers jurisdiction upon this Court over civil actions brought pursuant to this cited Section 1983 of Title 42, United States Code.

*Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1963), plaintiff without reservation submitted the Federal constitutional issues to the Commonwealth courts and his only remaining recourse was to petition the Supreme Court of the United States for review.[5]

In *P.I. Enterprises, Inc. v. Charles J. Cataldo,* 457 F.2d 1012 (1 Cir. 1972), the United States Court of Appeals for the First Circuit ruled that a state Supreme Court decision on Federal constitutional issues operated as a bar to the entertainment of an identical suit brought in Federal courts pursuant to Title 42, United States Code, Section 1983. In that case the Court of Appeals stated:

> ". . . The appellants herein elected to litigate the constitutional validity of the ordinance in state court and bypassed the opportunity for federal review by failing to appeal the state decision to the United States Supreme Court. *A complaint under the Civil Rights Act does not provide the springboard for an unhappy state litigant to raise his federal claims de novo in federal court.*" (Emphasis added; *Id.* at p. 1015).

When faced with the argument that the Federal court had before it a different cause of action than that entertained by the state courts the Court of Appeals stated in *Cataldo,* supra:

> "Obviously the federal cause of action is different from that brought in state court, but the doctrine of collateral estoppel 'precludes relitigation of issues actually litigated and determined in the prior suit, *regardless of whether [the judgment] was based on the same cause of action as the second suit.*' *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955)." (Emphasis added in the original). (*Id.* at p. 1015).

In *Lovely v. Laliberte,* 498 F.2d 1261 (1 Cir. 1964), the Court of Appeals for the First Circuit applied the doctrine of *res judicata* in a more dramatic situation. Francis Lovely was sued by Laliberte in the state courts in an eviction proceeding. As defendant in the state courts Lovely *did not raise a First Amendment claim allegedly present either as a defense or a counterclaim.* The state court had ordered Lovely's eviction and he did not appeal choosing instead to file an action in the federal district court alleging that Laliberte was maliciously and unconstitutionally employing state process to evict him from Laliberte's mobile home park.

The Court of Appeals for the First Circuit found in, *Lovely* that *res judicata* precluded defenses which were actually *not raised* in the state courts but which *might have been.* The Court stated:

> "Res judicata is, of course, different from collateral estoppel, which we have discussed and applied in recent cases . . . [citations omitted]. In those there were different parties in the suit preceding the federal suit. We applied the doctrine of collateral estoppel as to issues actually litigated and decided by the first judgment. *Res judicata, when the suit is between the same parties and concerns the same nucleus of [operative] facts, is of broader scope and bars issues even if unlitigated.* This familiar role is not diminished because Lovely's federal case alleges a violation of constitutional rights; state courts, too, are guardians of the federal constitution . . . Id. at p. 1263. (Emphasis added. Citations and footnote omitted.)

We feel that in the present case the matter is *res judicata* in virtue of the judgment by the Commonwealth courts. This is more so when one bears in mind that the Federal constitutional claims raised before us were presented to the state courts, although this was not necessary for the existence of *res*

---

5. In *England,* supra, the Supreme Court ruled:
"... we now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them de-

cided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court."

*judicata.* Under these circumstances we are estopped from entertaining this case.

■ Even when this case is being dismissed by virtue of the doctrine of *res judicata* upon plaintiff's claim we should note that consistently it has been held that under Title 42, United States Code, Section 1983, every act performed by a judge in his judicial capacity is immune from damages' suits by litigants. *Dear v. Rathje,* 391 F.Supp. 1, (D.C. Ill. 1975); *Blouin v. Dembitz,* D.C. N.Y., 367 F.Supp. 415, aff'd 2 Cir., 489 F.2d 488. This doctrine goes as far as to determine that judicial immunity is absolute even though the judge may have acted in excess of his jurisdiction and with malice. *Duba v. McIntyre,* 501 F.2d 590, (8 Cir. 1974); *Cadena v. Perasso,* 498 F.2d 383, (9 Cir. 1974); *Smith v. Smith,* 396 F.Supp. 367, (D.C. Or. 1973), affirmed 9 Cir., 519 F.2d 1376.

■ The doctrine of judicial immunity is not a clannish effort to protect one's own brood. It is not for the protection or benefit of a malicious or corrupt judge but for the benefit of the public so that the judges, state or federal, may feel at liberty to exercise their functions with independence and without fear of consequences. *Adkins v. Underwood,* 370 F.Supp. 510 (D.C. Ill. 1974), aff'd 7 Cir., 520 F.2d 890.

Wherefore, in view of the foregoing, the complaint in the instant case must be dismissed. The Clerk of the Court is ordered to enter judgment accordingly.

IT IS SO ORDERED.