**Eusebia FERNANDEZ etc.,**
**Plaintiff, Appellant,**

v.

**Honorable Jose TRIAS MONGE etc., et**
**al., Defendants, Appellees.**

No. 78–1066.

United States Court of Appeals,
First Circuit.

Argued June 9, 1978.

Decided Sept. 28, 1978.

Levin H. Campbell, Circuit Judge, did not join in a portion of the opinion but rather stated his position separately.

Maria Laura Colon, Hato Rey, P. R., with whom Heriberto Quinones-Eshevarria, Hato Rey, P. R., was on brief, for appellant.

Reina Colon de Rodriguez, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for appellees.

Before CAMPBELL and BOWNES, Circuit Judges, PETTINE, District Judge *.

PETTINE, District Judge.

This case dramatically diagrams the pitfalls that snare or nearly snare litigants and courts alike when a constitutional claim is brought in federal court that involves an ongoing state prosecution. The deceptively simple rule announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that a federal court should not enjoin the pending state proceeding, premised on the sound judicial philosophy of respect for the state forum, has resulted all too often in practice in justice delayed.[1] In the instant case, justice delayed is literally justice denied for the juvenile here who claims that his detention for several months prior to trial was without benefit of due process procedures required by the Constitution.

---

* Of the District of Rhode Island, sitting by designation.

1. Mr. Justice Stevens recently described the present state of the *Younger* doctrine thus: Thirty years ago Mr. Justice Rutledge characterized a series of Illinois procedures which effectively foreclosed consideration *of the* merits of federal constitutional claims as a "procedural labyrinth . . . made up entirely of blind alleys." *Marino v. Ragen,* 332 U.S. 561, 567 [68 S.Ct. 240, 243, 92 L.Ed. 170]. Today Illinois litigants may appropriately apply that characterization to the Court's increasingly Daedalian doctrine of abstention. *Trainor v. Hernandez,* 431 U.S. 434, 469 [97 S.Ct. 1911, 52 L.Ed.2d 486] (1977) (dissenting).

His claim has yet to receive consideration by any court, local or federal. We reverse the district court's dismissal of the complaint and remand for an expeditious resolution of plaintiff's constitutional claim.

On September 27, 1977, defendant Carlos Haddock Perez, Judge of the Caguas Juvenile Court, ordered complaints filed against plaintiff Fernandez, a juvenile, charging Fernandez with five violations of the Penal Code of the Commonwealth of Puerto Rico. At the same time, Judge Perez placed Fernandez in detention pending trial; no bail was set because, under Puerto Rican law, 34 L.P.R.A. sec. 2007(d) (1969), juveniles are not eligible for bail. Plaintiff Fernandez alleges that the filing of the complaints and the pretrial detention were ordered without an adversary probable cause hearing, either before or since. In this respect, Judge Perez followed the procedure established for juvenile courts throughout the Commonwealth, 34 L.P.R.A. secs. 2001 et seq., App. 1, Rules for Minors (1969). Pursuant to these Rules, the juvenile judge orders the filing of a complaint if "there is good cause to believe the minor committed the offense". Rule 5.1. His determination of good cause is apparently based solely on a social worker's or juvenile probation officer's investigatory report. Typically, that report results from the worker's or officer's interviews with the juvenile. The judge orders detention unless he finds, also based on the report, that "detention is not required for the best interests of the minor and of the community". Rule 3.6. Plaintiff complains that these ex parte procedures fail to afford the juvenile any opportunity prior to trial to contest either the probable cause finding or his pretrial detention.

In a petition to the juvenile court on October 18, 1977, while still detained, plaintiff requested a judicial hearing to determine probable cause. Plaintiff and defendants differ over whether the request was premised solely on the Constitution of Puerto Rico, as plaintiff maintains, or also on the United States Constitution, as defendants insist. That request was denied orally on October 26, 1977.

On November 18, 1977, plaintiff filed a petition for certiorari before the Supreme Court of Puerto Rico, raising both federal and Commonwealth constitutional claims. On December 8, 1977, the petition was denied without any indication of the reasons for denial.

No appeal was taken to the United States Supreme Court. Instead, on December 13, plaintiff filed a class action in federal district court pursuant to 42 U.S.C. sec. 1983 (1970), seeking a stay of state criminal proceedings scheduled to begin December 15, a declaration that the juvenile court procedure violated the federal constitution and an injunction enjoining defendants, Judge Perez, and the Honorable Jose Trias Monge, Chief Justice of the Supreme Court of Puerto Rico, in his administrative capacity, from following the procedure of detaining juveniles without a probable cause hearing. On December 14, the district judge refused to stay the state prosecution, finding, contrary to plaintiff's argument, that the trial on the merits would not moot the constitutional claim regarding pretrial detention. In addition, the district judge dismissed the federal action in deference to the pending state prosecution on the authority of *Younger* and *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Although plaintiff's certiorari petition had been denied, the district court viewed the denial as no more than a rejection of an interlocutory appeal, with no negative intimations about the future prospects of a final appeal. The district court interpreted *Huffman* to compel dismissal of the federal complaint since avenues of state appellate review remained unexhausted.

Plaintiff remained in detention until his escape on December 15. Because of his flight, trial on the merits in juvenile court was postponed. Upon his return to custody in early June, 1978, trial was rescheduled for June 22.

## I.

■ On appeal of the district court's dismissal, plaintiff urges that *Younger* re-

straint is inapplicable to his federal action. We agree. In the paradigm situation calling for *Younger* restraint, the state defendant brings a federal action challenging the statute under which he is simultaneously being prosecuted. Because the defendant can raise the constitutional defense in the ordinary course of his state prosecution, he has an immediate adequate remedy without federal intervention. Moreover, federal declaratory or injunctive relief would necessarily halt or undermine the validity of the pending criminal proceedings. To avoid this friction, *Younger* requires dismissal of the federal action, absent exceptional circumstances. *See Cicero v. Olgiati,* 426 F.Supp. 1213, 1218 (S.D.N.Y.1976); Developments in the Law—Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1318–20 (1977).

*Younger* restraint is not limited to a challenge on the merits but extends, for example, to a claim of unconstitutional search and seizure, *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). That claim can be adequately raised in due course at a suppression hearing. In addition, a federal finding of unconstitutionality necessarily undermines a state prosecution relying on the inadmissible evidence. In the many cases since *Younger,* the Supreme Court has never abandoned these essential predicates to *Younger* restraint—adequate state remedy and danger of federal interruption of pending state proceeding—but instead has expanded their scope. For example, in *Huffman v. Pursue, supra,* because the federal plaintiff had an adequate

remedy in the state's direct appeal procedure and federal relief would interfere with that unexhausted appeal, *Younger* restraint was in order.

By contrast, plaintiff in the instant case neither had an adequate remedy in the Commonwealth courts, nor would the federal injunctive or declaratory relief he sought affect the pending trial on the merits. His constitutional challenge addresses neither the merits of his prosecution nor the procedure or admission of evidence at trial, but rather the procedure applicable to his pretrial detention. His claimed right not to be detained prior to trial without a due process hearing is not adequately protected by relief at or post trial. Concomitantly, violation of that collateral right is neither a defense at trial nor grounds for vacation upon conviction. *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). Thus, he does not have the opportunity to raise his collateral claim in the ordinary course of the Commonwealth's proceedings and federal declaratory or injunctive relief would not impact in any way the pending trial.[2]

The absence of an adequate remedy and of the danger of federal interference has removed *Younger* barriers to other challenges to state pretrial procedures. For example, in *Gerstein v. Pugh, supra,* a case that involved a similar problem of *Younger* applicability, the Supreme Court expressly noted that *Younger* did not require dismissal of a constitutional challenge brought in federal court by adult defendants detained while awaiting trial without a probable cause determination. The Court wrote:

2. The district court's denial of a stay of state court proceedings is not before us on appeal. The court was right in refusing to stay the trial, since improper pretrial detention would not deprive Puerto Rico of the right to try the defendant. By the same token, trial and conviction or acquittal would neither moot plaintiff's constitutional claim nor deny him standing as a class representative. *Gerstein v. Pugh, supra,* 420 U.S. at 110 n.11, 95 S.Ct. at 861.

Not only will injunctive relief, if ultimately granted, not interfere with this particular prosecution, it also will not require the continuing federal judicial supervision of local criminal procedures that was found unduly intrusive in a challenge to discriminatory bail practices in

*O'Shea v. Littleton,* 414 U.S. 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The instant claim addresses the statutory procedure, not its daily administration; relief, fashioned after *Gerstein v. Pugh, supra,* 420 U.S. at 123, 95 S.Ct. at 867, would outline only the minimum due process standard, leaving the choice of procedures and the operational details to the Commonwealth. *See Cicero v. Olgiati, supra,* 426 F.Supp. at 1218–20. *Compare with Wallace v. Kern,* 520 F.2d 400, 404–08 (2d Cir. 1975), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976); *Mudd v. Busse,* 437 F.Supp. 505 (N.D. Ind.1977); *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 145 (E.D.Pa.1977).

[R]espondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits. 420 U.S. at 108 n.9, 95 S.Ct. at 860.

In support, the Court cited the Third Circuit's similar holding in the juvenile context, *Conover v. Montemuro,* 477 F.2d 1073, 1082 (1972). Despite a more recent extension of *Younger* restraint to a challenge to pretrial attachment procedures, *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Court in *Trainor* specifically distinguished *Gerstein,* without even remotely doubting its continuing validity. Unlike *Gerstein,* the *Trainor* attachment procedure was considered integral to the underlying action for fraud brought by the state. In addition, federal plaintiffs never answered the attachment or moved to quash it; both procedures were available in the ordinary course of state proceedings. *Id.* at n.9. The Supreme Court remanded for determination of whether the constitutional claim could be raised through either procedure, as a matter of local law. By implication, if the claim could not thus be raised, *Younger* restraint would be inappropriate.

▬ To the extent the Supreme Court counsels *Younger* restraint in cases where federal relief will implicate the ongoing state proceedings and an adequate state remedy is available,[3] the Court has apparently suggested a form of exhaustion of state remedies. However, neither *Younger* nor its later extensions ever intended to import wholesale an exhaustion requirement to sec. 1983 actions.[4] *Steffel v. Thompson,* 415 U.S. 452, 472-73, 94 S.Ct. 1209, 1222-1223, 39 L.Ed.2d 505 (1974); *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 609 n.21, 95 S.Ct. at 1211; *Clark v. Lutcher,* 436 F.Supp. 1266, 1270 (M.D.Pa.1977); *Cicero v. Olgiati, supra,* 426 F.Supp. at 1220. To be consistent with the nonexhaustion principle of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *McNeese v. Board of Education,* 373 U.S. 668, 82 S.Ct. 1433, 10 L.Ed.2d 622 (1963), which principle has been repeatedly upheld, *e. g., Steffel v. Thompson, supra,* 415 U.S. at 472-73, 94 S.Ct. 1222-1223. *Younger* exhaustion must necessarily be limited to remedies, trial or appellate, that are provided in the ordinary course of the pending state proceedings. *See Pugh v. Rainwater,* 483 F.2d 778, 782 (5th Cir. 1973), *aff'd in part sub nom. Gerstein v. Pugh, supra,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54; *Developments, supra,* 90 Harv.L.Rev. at 1318–20. Thus, the fact that the federal

---

3. *See generally State of New Jersey v. Chesimard,* 555 F.2d 63, 66–68, 69–72, 75–78 (3d Cir. 1977) (en banc) (majority, over strong dissents, held that even federal relief that would not substantially interfere with trial, nonetheless barred by *Younger* when state interlocutory appeal remains available); Note, Federal Equitable Relief in Matters Collateral to State Criminal Proceedings, 44 Fordham L.Rev. 597 (1975).

4. Plaintiff explicitly selected a sec. 1983 action in preference to a federal habeas corpus petition, presumably to obtain the advantages of a class action and to avoid habeas' exhaustion requirement. Conceding that habeas was a viable alternative, *cf. Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), it was not, however, the exclusive avenue of relief since plain-

tiff did not seek release from detention but simply an order mandating a probable cause hearing, *Gerstein v. Pugh, supra,* 420 U.S. at n.6, 95 S.Ct. 854. Although that hearing might ultimately result in plaintiff's release, if probable cause is found wanting, that result is clearly not inevitable. *See Williams v. Ward,* 556 F.2d 1143, 1150–51 (2d Cir.), *cert. dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977), (relief in form of new parole hearing not exclusively in habeas since release not certain consequence). In this respect, the instant case is in marked contrast to *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), wherein the Court held that plaintiffs could only maintain a habeas petition, exclusive of a § 1983 action, because the requested restoration of good-time credits necessarily hastened prisoner/plaintiffs' release.

plaintiff could have sought an injunction, 32 L.P.R.A. § 3524 (Supp.), as defendants propose, in a completely separate Commonwealth court proceeding outside the four corners of the pending state prosecution, is of no consequence to plaintiff's sec. 1983 action. Similarly, plaintiff's failure to explore the possible alternative avenue of state habeas corpus relief[5] should not bar plaintiff's suit. Contrary to the Second Circuit's reading, *Wallace v. Kern*, 520 F.2d 400, 406 (1975), *cert. denied*, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976), the Supreme Court did not reject *Younger* restraint in *Gerstein* because state habeas relief was unavailable. That fact was mentioned solely in connection with the merits of the *Gerstein* plaintiff's claim that the state procedure offered no opportunity for a determination of probable cause prior to the preliminary hearing 30 days following arrest and detention. In concluding that no adequate state remedy was available in *Gerstein,* the Court noted only that the challenge to pretrial detention procedures could not be raised as a defense at trial.

■ In the instant case, plaintiff did in fact make some attempt to exhaust Commonwealth remedies.[6] In a motion which was not part of the normal procedure in juvenile court, plaintiff requested a hearing to determine probable cause. Upon denial,

he petitioned the Supreme Court of Puerto Rico by writ of certiorari and the writ was also denied.[7] Plaintiff's vain efforts to obtain a definitive Commonwealth decision go a long way to indicate that, in fact, no adequate Commonwealth remedy was available. *Cf., e. g., Sims v. Dept. of Public Welfare,* 438 F.Supp. 1179, 1188 (S.D.Tex. 1977) (three-judge court). With regard to the motion in juvenile court, it is unclear whether the juvenile court was even an appropriate or competent forum, under local or federal law, to entertain constitutional challenges to its own procedures. *See Trainor v. Hernandez, supra,* 431 U.S. at 447, 97 S.Ct. 1911 (majority), 468–70, 97 S.Ct. 1911 (Stevens, J., dissenting); *Buffalo Teachers Federation v. Helsby,* 435 F.Supp. 1098, 1102 (S.D.N.Y.1977). With regard to available appeals, the court below interpreted the Puerto Rico Supreme Court's denial of certiorari as merely a rejection of an interlocutory appeal, leaving open, and thus "pending", review by that court after trial. But such post-trial review is small comfort to the juvenile who claims to have been detained for several months prior to trial without due process. *Compare with State of New Jersey v. Chesimard, supra,* 555 F.2d at 67, 73, 80–81.[8] Thus, plaintiff's unsuccessful efforts in Commonwealth courts do not alter but rather strengthen

5. *Cf.* 34 L.P.R.A. sec. 1755(7) (1969) (habeas for pretrial detention without probable cause). *But see Negron v. Lugo,* 59 P.R.R. 863 (1942) (habeas relief not available to juveniles).

6. Plaintiff apparently took these steps in obedience to an earlier unpublished opinion of the United States District Court for the District of Puerto Rico which dismissed a similar constitutional claim brought in federal court pursuant to sec. 1983 by a defendant in local juvenile court, requiring prior appeal to the Puerto Rico Supreme Court on the authority of *Huffman* and *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Padilla v. Monge,* C.A. No. 75–35 (1975).

7. Whether plaintiff actually raised the federal constitutional claim in juvenile court and the import of a denial of certiorari are discussed *infra.*

8. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490–93, 93 S.Ct. 1123,

1127-1128, 35 L.Ed.2d 443 (1973) (speedy trial); *Fain v. Duff,* 488 F.2d 218 (5th Cir. 1973), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed. 2d 666 (1975) (double jeopardy); *United States ex rel. Davis v. Camden County Jail,* 413 F. Supp. 1265 (D.N.J.1976) (delay in arraignment); *Thames v. Justices of Superior Court,* 383 F.Supp. 41 (D.Mass.1974) (double jeopardy); *U. S. ex rel. Hill v. Hendricks,* 321 F. Supp. 300 (E.D.Pa.1970) (quashing indictment) (cases providing federal habeas relief when no adequate state remedy prior to trial for present denial of constitutional right). *But see Moore v. De Young,* 515 F.2d 437 (3d Cir. 1975) (speedy trial). *Cf. Abney v. United States,* 431 U.S. 651, 656 62, 97 S.Ct. 2034, 2038 2042, 52 L.Ed. 2d 651 (1977) (interlocutory appeal permitted of denial of dismissal of indictment on double jeopardy grounds). *But cf. U. S. v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (interlocutory appeal denied for denial of speedy trial dismissal motion).

our conclusion that *Younger* restraint was unwarranted since no adequate remedy in the ordinary course of Commonwealth proceedings was, in fact, available.

## II.

■ Defendants argue on appeal[9] that even if *Younger* principles did not require plaintiff's efforts to obtain a ruling in a Commonwealth court on his right to a probable cause hearing, plaintiff did in fact raise the federal constitutional issue on the juvenile and appellate court levels. The net result, defendants suggest, is a Commonwealth court judgment that federal constitutional due process does not require a probable cause hearing for detained juveniles. That judgment, defendants conclude, must be accorded res judicata effect, thus barring plaintiff's sec. 1983 action raising the identical constitutional claim. Plaintiff responds that the federal constitutional claim was only noted as background in the juvenile court motion, with center stage occupied by the Commonwealth constitutional claim. Conceding that the federal claim was raised and fully briefed in the petition for certiorari, plaintiff argues that denial of certiorari is not tantamount to a decision on the merits. Therefore, plaintiff concludes, there is no Commonwealth court decision to give res judicata effect to. In the alternative, plaintiff seeks escape from the res judicata juggernaut set in motion by *Younger* restraint when the federal plaintiff is an involuntary defendant in state court and raises the federal constitutional claims pursuant to, or, in this case, in anticipation of *Younger* restraint.

■ As a general rule, this Circuit accords state court decisions of federal constitutional claims res judicata effect in subsequent sec. 1983 actions. *See Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973). The easiest application of the res judicata bar involves a federal plaintiff who seeks to relitigate the identical constitutional claim he, as a state plaintiff, sued upon and lost in state court. *See England v. Louisiana State Board of Medical Examiners, supra* 375 U.S. at 419, 84 S.Ct. 461, 11 L.Ed.2d 440. Consistent with traditional principles of res judicata, this Court has also barred subsequent sec. 1983 actions by a losing state plaintiff who did not actually raise the federal constitutional ground in state court but who instead urged an alternate ground of relief based on the identical facts. *E. g., Ramirez Pluguez v. Cole*, 571 F.2d 70 (1st Cir. 1978). *Accord Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *Spence v. Latting*, 512 F.2d 93, 98 (10th Cir.), *cert. denied*, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975). This principle—res judicata bar of claims that *might* have been raised—was extended to the state court defendant in a civil suit who failed to raise, as either a defense or counterclaim, his federal constitutional claim. *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

■ Again in the context of the involuntary state defendant but with the added special exigencies of a criminal trial, this Circuit has accorded only collateral estoppel effect to those claims "*actually* litigated and decided at the state criminal trial. [Emphasis added.]" *Maynard v. Wooley*, 406 F.Supp. 1381, 1385 n.6 (D.N.H.1976) (three-judge court), *aff'd*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974) *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975). *Accord Meadows v. Evans*, 550 F.2d 345, 347 (5th Cir.) (*en banc*) (Tjoflat, J., concurring in part) (and cases cited therein), *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Blankner v. City of Chicago*, 504 F.2d 1037 (7th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1678, 44 L.Ed.2d 101 (1975); *Williams*

9. Because the district court ruled within a day of receipt of plaintiff's complaint, without opportunity for oral argument or opposition briefs, defendants were unable to raise the res judicata defense below but may properly do so on appeal. Although the district court has not had an opportunity to pass on the defense, in the interest of avoiding already exacerbated delay, we will proceed to the merits of the res judicata defense rather than remand that issue.

*v. Liberty,* 461 F.2d 325 (7th Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). *See Lombard v. Board of Education of City of New York,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975) (preclusion only of claims actually raised by state civil plaintiff); *Perrotta v. Irizarry,* 430 F.Supp. 1274, 1277 (S.D.N.Y. 1977). *Cf. Turco v. Monroe County Bar Association,* 554 F.2d 515, 521 (2d Cir. 1977); *Goodrich v. Supreme Court of the State of South Dakota,* 511 F.2d 316, 318 (8th Cir. 1975). Additionally, to bar all claims that *might* have been raised in a criminal trial forces the criminal defendant to the uncomfortable choice between, on the one hand, possibly alienating the trial judge, particularly when the judge's own procedures are questioned, and delaying trial, and, on the other, foregoing his constitutional claim. *See* Developments, *supra,* 90 Harv.L.Rev. at 1340. *Cf. Moran v. Mitchell,* 354 F.Supp. 86, 88 (E.D.Va.1973) (Hobson's choice for criminal defendant who must either risk conviction or forego federal forum). In addition, in many trials of less serious criminal matters, the state court may be of limited jurisdiction with informal, non-adversarial procedures and inadequate record-keeping. Imposing the res judicata bar for failure to raise a substantial constitutional claim in that type of forum would not best serve the interests of either local or federal judicial systems. *See* Currie, Res Judicata: The Neglected Defense, 45 U.Chi.L.Rev. 317, 348–49 (1978). The Commonwealth's juvenile court is just such a forum, where the deliberate emphasis is away from a formal, adversarial, issue-oriented process. Typical of the court's informal nature, the juvenile judge denied plaintiff's motion orally and no transcript has been furnished on appeal.[10] Lastly, the narrower preclusion rule is particularly warranted when physical liberty is at stake. Because an unconstitutional deprivation of physical liberty is an intolerable affront to our most fundamental notions of justice, collateral attack of a state conviction is available through a writ of habeas corpus. Similarly, when the sec. 1983 action involves physical restraint, as here, justice counsels against an expansive application of res judicata. *Ellis v. Dyson,*

---

**10.** Judge Campbell does not join in the remainder of this paragraph. In place thereof, he would state the following:

"There are compelling reasons to apply to this case our rule limiting preclusion after criminal trials to matters actually litigated and decided. While a juvenile case is sometimes denominated 'civil' rather than 'criminal', for present purposes the proceeding in the Commonwealth court was in all essential respects analogous to a criminal matter. *See In re Gault,* 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527] (1967). To be sure, plaintiff's contention regarding the Commonwealth's right to confine him pending trial without a probable cause hearing was unrelated to the merits of the juvenile proceeding; under Puerto Rican procedure the claim could perhaps have been raised in a separate civil injunctive suit or petition for habeas corpus filed separately in some other court of the Commonwealth, in which event the broader rule of res judicata might apply. The fact remains, however, that to the extent plaintiff challenged the adequacy of the probable cause determination, he did so in the framework of the juvenile prosecution, and it is therefore the character of *that proceeding* that determines what rule of preclusion to apply in the present § 1983 action. Looking to that proceeding, the very separateness of plaintiff's claim from the issues in the juvenile trial, coupled with the extraordinary nature of a request that the judge disregard a Puerto Rican pretrial detention statute, strongly suggests that we should now preclude plaintiff only from raising in his § 1983 action those questions that were clearly submitted to the Puerto Rican juvenile court and on which he actually received a ruling. To say that he should have raised other questions in the local court (specifically his present claim under the federal constitution), and hence cannot now raise them, would be to assume that the local juvenile judge was prepared and willing, in the context of the ongoing juvenile prosecution, to give close attention to what, from his perspective, would undoubtedly have seemed to be unusual, even bizarre challenges, far removed from the merits of the case at hand. No realistic basis in local procedure or practice for making such an assumption has been called to our attention. Rather the juvenile judge's summary, unexplicated denial of plaintiff's motion for a probable cause hearing strongly suggests that the judge may have regarded even such local constitutional grounds as were advanced to be effectively outside the pale of his authority."

421 U.S. 426, 440–41 n.6, 95 S.Ct. 1691, 1699, 44 L.Ed.2d 274 (1975) (Powell, J., dissenting). *See Mastracchio v. Ricci, supra*, 498 F.2d at n.2. That these jurisprudential concerns temper the effect of res judicata is entirely appropriate. *See Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 269 (2d Cir. 1977).

While better protecting the interests of the state criminal defendant, collateral estoppel, limited to claims actually litigated, still significantly promotes the comity goals that the broader doctrine of res judicata also serves. Friction arising from inconsistent state and federal decisions and the appearance of distrust of the state forum as co-equal enforcer of the federal constitution are both avoided by collateral estoppel principles. Only the benefit of repose for the opposing party and economy of judicial time are lost by permitting federal adjudication of claims that might have been raised in state court but were not in fact. Although these interests are not insubstantial, the weightier concerns of protecting a fair criminal trial and the involuntary state criminal defendant's choice of forum for his constitutional claims justify the more limited bar. *Cf.* Developments, *supra*, 90 Harv. L.Rev. at 1330–54.[11]

▮ Consistent with the framework of prior First Circuit holdings, our attention must now focus on whether the federal constitutional claim was actually litigated and decided by the Commonwealth courts. That determination is based on a careful scrutiny of the record, including the parties' pleadings and the decisions of the various courts. Lamentably, that record has significant gaps and ambiguities, most notably the absence of any record of the juvenile judge's decision, that render difficult the determination of what was in fact decided. However, informed by the concerns we have outlined, any doubts must be resolved in plaintiff's favor. *Mastracchio v. Ricci, supra*, 498 F.2d at 1261; *Clark v. Lutcher, supra*, 436 F.Supp. at 1272.

11. Today, we have emphasized the policy reasons for limiting preclusion to claims actually litigated in the prior criminal proceeding rather than the technical rules of res judicata. Especially when federalism interests are involved, modern analysis has tended away from the technicalities in favor of analysis of the purposes of issue and claim preclusion. *Currie, supra*, 45 U.Chi.L.Rev. at 341–42. But even consistent with traditional principles, the more limited bar of collateral estoppel, as opposed to res judicata, is appropriate here.

Technically, for res judicata to apply, both the cause of action and the parties or their privies must be the same in both proceedings. Only the latter condition is satisfied in the instant suit. Although we are without enlightenment from the parties on the rules of mutuality and privity controlling in Puerto Rico, *see* Developments, *supra*, 90 Harv.L.Rev. at 1338, n.37 (reference to state law required by 28 U.S.C. § 1738 (1970)), a finding of privity between the Commonwealth and the federal defendants is compelled. Only equitable relief is sought against the defendant judges, sued solely in their official capacity and represented in the proceedings by the Solicitor General of Puerto Rico, *id.*, at 1347–48 n.82. *See* 1B Moore's Federal Practice ¶ 0.411[1] at 1253 (2d ed. 1974). By contrast, in *Mastracchio v. Ricci, supra*, the state criminal defendant turned federal plaintiff sought damages against a police officer in his individual capacity for alleged perjury at the criminal trial. In part because of the difference in the parties and the absence of privity, only collateral estoppel of claims actually litigated, not res judicata of claims that might have been raised, was invoked. *See Lovely v. Laliberte, supra*, 498 F.2d at 1263. However, also controlling in *Mastracchio* and in *Maynard v. Wooley, supra*, was the longstanding rule that civil and criminal contexts involve *different* causes of action and, consequently, only collateral estoppel is applicable. 1B Moore's Federal Practice ¶ 0.418[1] at 2701 (2d ed. 1974). That rule has equal force in the instant suit. In the civil context only, this Circuit has substituted a formal notion of the same cause of action with the broader inquiry into whether the federal claim arises out of "the same nucleus of fact" as the state claim that was raised in prior civil litigation with the same parties or their privies. *Lovely v. Laliberte, supra*, 498 F.2d at 1263. *Accord Ramirez Pluguez v. Cole, supra*, 571 F.2d 70. Although the facts of the instant plaintiff's state and federal claims are indeed the same, the special problems of the involuntary state defendant that we have discussed in the text fortify the continuing vitality of the traditional distinction between the civil and criminal contexts. Consistent with traditional rules and with the larger policy concerns, preclusion only of claims actually litigated in the prior criminal proceeding is mandated. *See, e. g., Cardillo v. Zyla*, 486 F.2d 473, 475 (1st Cir. 1973); cases cited *supra* at 854.

Examination of plaintiff's motion before the juvenile court indicates that plaintiff initially mentioned that both the Commonwealth and federal constitutions guaranteed the minor's right to a probable cause hearing. The only explicit reference to federal law noted that both the Puerto Rico and United States Supreme Courts, citing *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), recognized the criminal aspect of juvenile proceedings. In two places, plaintiff simply refers to "the constitutional principles of due process of law and fair treatment" and to "our Constitution". However, both these references, viewed in context, suggest that the Commonwealth constitution was intended and would be so understood by the decision-maker. The former reference follows discussion of the content of due process guaranteed by the local constitution and the latter is followed by citation to a decision by the Supreme Court of Puerto Rico. The central thrust of the motion is clearly local law. Comparison with plaintiff's well-briefed petition for certiorari, which he admits deliberately raised the federal claim, suggests that the omission of any federal case law in the motion, with the sole exception of *Gault*, was not inadvertent. Express reservation of the federal claim in the juvenile court was not necessary since the motion does not reasonably appear to raise that claim and no evidence indicates that the juvenile judge nonetheless actually proceeded to decide it. See *England v. Louisiana State Board of Medical Examiners, supra,* 375 U.S. at 421–22, 84 S.Ct. 461. We conclude, therefore, that the federal constitutional claim was not actually litigated in juvenile court. See, e. g., *Newman v. Board of Education,* 508 F.2d 277, 278 (2d Cir. 1975), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); *Perrotta v. Irizarry, supra,* 430 F.Supp. at 1277; *Suarez v. Administrador Del Deporte Hipico de Puerto Rico,* 354 F.Supp. 320, 325 (D.P.R.1972).

The issue with regard to plaintiff's appeal is not whether the federal claim was actually raised, which all sides concede, but whether that claim was actually decided by the Supreme Court of Puerto Rico. The Supreme Court simply denied certiorari without any statement of reasons. The district court, better versed in local practice than we, indicated that the interlocutory nature of the appeal and not the merits may have prompted the denial. Regardless of the reason, be it procedural [12] or substantive, the denial of certiorari is not the equivalent of a decision on the merits. The Supreme Court of Puerto Rico has explicitly and repeatedly advised that denial of certiorari without reasons does not "express any view as to the merits of the case," *Boringuen Furniture v. District Court,* 78 P.R.R. 858, 861 (1956), and signifies only that less than three judges were "inclined to issue the writ." *Bartolomei v. Superior Court,* 77 P.R.R. 436, 437 (1954). The federal district court for the District of Puerto Rico has so interpreted a denial of certiorari by the Commonwealth's highest court, *Suarez v. Administrador Del Deporte Hipico de Puerto Rico, supra,* 354 F.Supp. at 326–27. But see *Torres Irizarry v. Toro Goyco,* 425 F.Supp. 366 (D.P.R.1976) (dictum). That denial of certiorari imports no view on the merits is consistent with the United States Supreme Court's own practice. *E. g., Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 366 n.1, 93 S.Ct. 647, 650, 34 L.Ed.2d 577 (1973); *Maryland v. Baltimore Radio Show,* 338 U.S. 912, 919, 70 S.Ct. 252, 94 L.Ed. 562 (1950). In conclusion, since no Commonwealth court has passed on the merits of plaintiff's federal constitutional claim, collateral estoppel principles do not foreclose consideration of this claim by the district court.

*Reversed and remanded.*

---

**12.** For example, under local law, certiorari could be denied as premature if the court below did not have an opportunity to pass on the issue raised in the petition. *Commissioner of Insurance v. Superior Court,* 100 P.R.R. 545, 553 (1972).